IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 19, 2020 Session

## KEVIN E. EVANS, ET AL. V. RICKI K. CROXDALE, ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 17-CV-258-IV  O. Duane Slone, Judge**

_____

**No. E2019-01880-COA-R3-CV**

_____

This appeal concerns the trial court's summary judgment dismissal of the plaintiff's uninsured motorist insurance claim filed against his employer following a car accident. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and KRISTI M. DAVIS, J., joined.

Andrew R. Tillman, Knoxville, Tennessee, for the appellants, Kevin E. Evans and Angela M. Evans.[1]

Robert G. Norred, Jr., Cleveland, Tennessee, and Jason P. Steed, Dallas, Texas, for the appellee, AT&T Corp.

---

[1] During the pendency of this appeal, this court received a suggestion of death regarding Mr. Evans. This action shall proceed in his stead with Mrs. Evans as the surviving plaintiff. *See* Tenn. R. Civ. P. 25.01 ("In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.").

**OPINION**

## I.    BACKGROUND

This action arose from a car accident between Kevin Evans ("Plaintiff"), Ricki Croxdale, and Robert England. Mr. Croxdale was driving under the influence when he swerved into Mr. England's vehicle, causing him to strike Plaintiff's vehicle. Plaintiff, who was extracted from his vehicle, was taken to the hospital via ambulance. He spent several months in recovery, first in the hospital and then in a nursing facility. His injuries were extensive and resulted in a significant amount of medical bills.

The accident occurred while Plaintiff was driving a van leased and insured by his employer, AT&T Services, Inc., a wholly owned subsidiary of AT&T Corp. (collectively AT&T). Plaintiff and his wife, Angela M. Evans (collectively "Plaintiffs"), filed suit against Mr. Croxdale, who was uninsured, and Mr. England. Plaintiff also provided notice of the suit to AT&T's insurance company, Old Republic Insurance Company ("Old Republic"), as notice of intent to rely upon any uninsured motorist coverage in its policy with AT&T.[2]

Old Republic denied liability, claiming that AT&T rejected uninsured motorist coverage.[3] The policy at issue provided liability insurance for AT&T and its employees, with a deductible of $25 million and a corresponding maximum coverage amount of $25 million. Plaintiffs then amended their complaint to add AT&T as a self-insured entity, claiming that the policy with Old Republic was a dummy policy that made AT&T self-insured for $25 million.[4]

AT&T denied any liability pursuant to its policy with Old Republic and moved for summary judgment. AT&T argued that it was insured under a high-deductible policy that did not include uninsured motorist coverage and alternatively claimed that a self-insured entity is not required to furnish uninsured motorist coverage. Plaintiffs argued that AT&T's obligation to pay the first $25 million in liability amounted to self-insurance and that the waiver of coverage in the Old Republic policy was not effective to waive uninsured motorist coverage in the retained liability of $25 million. Plaintiffs further claimed that a self-insured entity is obligated to provide uninsured/underinsured coverage.

---

[2] State Farm Insurance Company ("State Farm") was also provided with notice as Plaintiffs' insurance provider. State Farm paid Plaintiffs pursuant to the terms of the policy.

[3] Old Republic was dismissed at the summary judgment stage and is not a party to this appeal.

[4] State Farm provided a brief for the trial court in support of this position.

The trial court found in favor of AT&T, holding that the high deductible could not be characterized as self-insurance pursuant to the terms of the insurance contract. The court alternatively ruled that a self-insured entity is not required to provide uninsured motorist coverage pursuant to Tennessee Code Annotated section 56-7-1201(a).[5]

Plaintiffs moved to certify the judgment as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure,[6] to which AT&T argued that the wrong entity had been named in the suit and that the judgment was not final for purposes of appeal because the claim against Mr. England remained pending. Plaintiffs moved to amend to include the additional entity. The court denied the requested amendment, reasoning that any amendment would be futile because summary judgment would also be granted against the new entity based upon the terms of the insurance contract. The court then certified the judgment as final over AT&T's objection.

## II.    ISSUES

A.    Whether the trial court erred in finding in favor of AT&T and denying liability pursuant to the terms of the insurance contract.

B.    Whether the trial court erred in alternatively ruling that a self-insured entity is not required to maintain uninsured motorist coverage.

C.    Whether the court erred in denying the motion to amend as futile.

## III.    STANDARD OF REVIEW

A trial court's decision of whether to grant or deny a motion for summary judgment is a question of law; thus, our review is de novo with no presumption of correctness afforded to the trial court's determination. *Guseinov v. Synergy Ventures, Inc.*, 467 S.W.3d 920, 924 (Tenn. Ct. App. 2014) (citation omitted). Summary judgment is appropriate if no genuine issues of material fact exist, and the movant meets its burden

---

[5] "Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage[.]"

[6] "When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

- 3 -

of proving that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The facts that are material to the issue raised in this appeal are not in dispute. Accordingly, we are tasked only with resolving issues of law, specifically, whether AT&T is liable pursuant to the terms of the policy and applicable statutory law.

Insurance policies are contracts. *Merrimack Mutual Fire Ins. Co.*, 59 S.W.3d 142, 147 (Tenn. Ct. App. 2001). Questions relating to the interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998). "As such, courts interpret insurance policies using the same tenets that guide the construction of any other contract." *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995). The terms of an insurance policy "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006). The primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Clark v. Sputniks*, 368 S.W.3d 431, 441 (Tenn. 2012). The policy should be construed "as a whole in a reasonable and logical manner, and the language in dispute should be examined in the context of the entire agreement." *Id.* (quotations omitted).

To the extent that the issues raised in this appeal require us to interpret and apply statutes, we note that statutory interpretation is a question of law, which we review de novo, affording no presumption of correctness to the conclusions of the trial court. *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015); *In re Baby*, 447 S.W.3d 807, 817 (Tenn. 2014); *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013) (citing *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009)). The principles of statutory interpretation are well established. When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

## IV.   ANALYSIS

### A. & B.

Tennessee requires every automobile liability insurance policy to include uninsured motorist coverage unless specifically rejected by the named insured in writing. Tenn. Code Ann. § 56-7-1201(a). The parties agree that AT&T rejected uninsured motorist coverage from Old Republic. As previously stated, the policy at issue provided only liability insurance for AT&T and its employees, with a deductible of $25 million and a corresponding maximum coverage amount of $25 million, thereby establishing that the policy itself does not cover the damages at issue.

Plaintiffs suggest that AT&T was self-insured for the first $25 million of the policy that is subject to the deductible of the same amount. Plaintiffs claim that as a self-insured entity, AT&T was required to provide uninsured motorist coverage pursuant to Tennessee Code Annotated section 56-7-1201, which requires every liability insurance policy to include uninsured motorist coverage and does not provide a caveat for self-insurers. AT&T responds that the van was insured through Old Republic and that AT&T, as the named insured, rejected uninsured motorist coverage, thereby establishing that there is no coverage pursuant to the plain terms of the contract. AT&T asserts that the terms of the policy apply no matter the size of the deductible. AT&T further responds that it is not self-insured as a matter of law because it has not obtained a certificate of self-insurance, a necessary requirement to self-insure. *See* Tenn. Code Ann. § 55-12-111(a) (requiring a self-insurer to obtain a certificate of self-insurance).

Tennessee Code Annotated section 56-7-1201(a) provides, in pertinent part, as follows:

(a)    Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.

(1)    The limits of the uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.

(2)    However, any named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage but not less than the minimum coverage limits in § 55-12-107. Any document signed by the named insured or legal representative that initially rejects the coverage or selects lower limits shall be binding upon every insured to whom the policy applies, and shall be conclusively presumed to become a part of the policy or contract when issued or delivered, regardless of whether physically attached to the policy or contract. . . .

(3)    No uninsured or underinsured motorist coverage need be provided in this state by an excess or umbrella policy of insurance.

Section 56-7-1201 does not include a provision relevant to self-insureds. Instead, guidance for those who qualify for self-insurance is found in Section 55-12-111, which provides, in pertinent part, as follows:

> (a)     Any person in whose name more than twenty-five (25) vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance from the commissioner as provided in subsection (c).
>
> * * *
>
> (c)     The commissioner has the discretion, upon the application of the person or religious sect or division, to issue a certificate of self-insurance when satisfied that the person or religious sect or division *is possessed and will continue to be possessed of an ability to pay any judgments that might be rendered against the person or religious sect or division*.
>
> (d)     The commissioner may, at any time after the issuance of a certificate of self-insurance, cancel the certificate by giving thirty (30) days' written notice of cancellation should there be reason to believe that the person or religious sect or division to whom this certificate was issued is no longer qualified as a self-insurer under this section.

(Emphasis added.).

A plain reading of Section 55-12-111 provides that a person who qualifies for and obtains self-insurance is insured for his or her own liability through his or her own assets. *See generally Martin v. Powers*, 505 S.W.3d 512, 518-19 (Tenn. 2017) (defining a self-insurer as "a person or entity able to cover the risk of a liability through their own assets"). The statute does not require such persons to carry uninsured motorist coverage. Plaintiffs argue that such an interpretation ignores the plain language and intent of the legislature to provide coverage. We disagree. Section 56-7-1201 specifically allows insureds to reject uninsured motorist coverage and comply with state law by securing only liability insurance. A self-insured by definition is likewise insured for his or her own liability by virtue of the fact that such person has the ability to pay judgments rendered against him or her. With the above considerations in mind, we conclude that AT&T has established that it is entitled to judgment as a matter of law because Plaintiffs can prove no set of facts entitling them to relief.

C.

Plaintiffs argue that the court erred in denying the requested amendment of the complaint as futile when Rule 15 of the Tennessee Rules of Civil Procedure[7] permits parties to freely amend pleadings. Plaintiffs explain that the entity had notice of the potential for liability by virtue of their relationship with AT&T and AT&T's identification of the correct parties. AT&T responds that the court did not abuse its discretion when amending the complaint to add another AT&T entity that also did not obtain uninsured motorist coverage would be futile.

Trial courts have broad authority to decide motions to amend pleadings and will not be reversed absent an abuse of discretion. *Hawkins v. Hart*, 86 S.W.3d 522, 532 (Tenn. Ct. App. 2001). Under the abuse of discretion standard, an appellate court cannot substitute its judgment for that of the trial court. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006). Numerous factors guide a trial court's discretionary decision whether to allow a late filed amendment, including undue delay, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, and futility of the amendment. *Pratcher v. Methodist Healthcare Memphis Hosp.*, 407 S.W.3d 727, 741 (Tenn. 2013) (citing *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)). We uphold the court's discretionary decision on this issue.

# V.    CONCLUSION

We affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the surviving appellant, Angela M. Evans.

_____
JOHN W. MCCLARTY, JUDGE

---

[7] "[A] party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires."